# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEGAL BAY LLC,<br>          Plaintiff,<br>          v.<br>MUSTANG FUNDING, LLC,<br>MUSTANG SPECIALTY FUNDING<br>I, LLC, MUSTANG SPECIALTY<br>FUNDING II, LLC, JAMES BELTZ<br>and KEVIN CAVANAUGH,<br>          Defendants. | Civ. A. No. 22-3941(ES)(JBC)<br><br>**Oral Argument Requested**<br>Motion Day: October 3, 2022 |

---

## PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO AMEND

---

**FOX ROTHSCHILD LLP**
Jordan B. Kaplan, Esq.
Kieran T. Ensor, Esq.
49 Market Street
Morristown, New Jersey
JBKaplan@FoxRothschild.com
KEnsor@FoxRothschild.com
(973) 992-4800
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS ........................................................................2

PROCEDURAL HISTORY AND FACTS ESTABLISHING  JURISDICTION
     OVER DEFENDANTS ...................................................................5

LEGAL BAY'S CROSS MOTION TO AMEND ......................................8

LEGAL ARGUMENT .............................................................................9

    I.     Defendants' Motion Should Be Denied Because This Court Has
          Personal Jurisdiction Over All The Defendants...............................9

    II.    Defendants' Motion Should Be Denied Because Legal Bay States
          Claims For All Counts In The Complaint. ........................................15

        A.    Legal Bay's Complaint Surpasses Rule 9(B)'S Heightened
              Pleading Standard For The Fraud In The Inducement Claim.. 15

        B.    Legal Bay Plausibly Pleads Causes Of Action For All
              Remaining Counts.................................................................. 17

            1.    Legal Bay Sufficiently States Claims for Relief Related
                  to the Joint Venture Formed Between the Parties. ........ 18

                a.    Count One.........................................................18

                b.    Count Two........................................................21

                 c.    Count Three......................................................22

                 d.    Count Four........................................................23

                 e.    Count Five........................................................24

             2.    Legal Bay Sufficiently Pleads a Claim for Breach of
                  Contract under the LOCA............................................ 25

    III.   GOOD CAUSE EXISTS TO PERMIT LEGAL BAY TO
          AMEND ITS OPERATIVE COMPLAINT IN THIS MATTER.......26

CONCLUSION    .................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alban v. BMW of N. Am., LLC,*
No. 09-5398, 2010 WL 3636253 (D.N.J. Sept. 8, 2010)....................................15

*Allaham v. Naddaf,*
635 F. App'x. 32 (3d Cir. 2015) ........................................................................10

*Amberson Holdings LLC v. Westside Story Newspaper,*
110 F. Supp. 2d 332 (D.N.J. 2000) ...................................................................11

*Ameripay, LLC v. Ameripay Payroll, Ltd.,*
334 F. Supp. 2d 629 (D.N.J. 2004) .....................................................................9

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................18

*Blakely v. Cont'l Airlines,*
164 N.J. 38 (N.J. 2000) .....................................................................................14

*Borough of Kenilworth v. Graceland Memorial Park Ass'n,*
124 N.J. Eq. 35 (N.J. Ch. Ct. 1938)...................................................................22

*Bowne v. Windsor,*
106 N.J. Eq. 415 (Ch. Div. 1930) ......................................................................24

*Bracco Diag., Inc. v. Bergen Brunswig Drug Co.,*
226 F. Supp. 3d 557 (D.N.J. 2002)...............................................................15, 16

*Bristol-Myers Squibb Co. v. Superior Court,*
137 S. Ct. 1773 (2017).......................................................................................10

*Cerciello v. Canale,*
563 F. App'x 924 (3d Cir. 2014) .........................................................................9

*Chiron Corp. v. Dir., Div. of Taxation,*
21 N.J. Tax 528 (Tax 2004)...............................................................................21

*Christidis v. Pennsylvania Mortgage Trust,*
717 F.2d 96 (3d Cir. 1983) ................................................................................15

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989) ..............................................................................15

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)............................................................................................10

*Ditscher v. Booth*,
   13 N.J. Super. 568 (Ch. Div. 1951) ....................................................................21

*Dole v. Acro Chem. Co.*,
   921 F.2d 484 (3d Cir. 1990) ...............................................................................27

*Fishman v. Raphael & Fishman*,
   141 N.J. Eq. 576 (Ch. Div. 1948) .......................................................................21

*Foman v. Davis*,
   371 U.S. 178 (1962)............................................................................................27

*Franklin Pavkov Constr. Co. v. Ultra Roof, Inc.*,
   51 F. Supp. 2d 204 (N.D.N.Y. 1999)...........................................................25, 26

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)............................................................................................10

*Grayson v. Mayview State Hosp.*,
   293 F.3d 103 (3d Cir. 2002) ...............................................................................27

*Hanson v. Denkla*,
   357 U.S. 235 (1958)............................................................................................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)............................................................................................10

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998) ...............................................................................10

*Innovative Biodefense, Inc. v. VSP Tech., Inc.*,
   176 F. Supp. 3d 305 (S.D.N.Y. 2016) ................................................................25

*Kavon v. BMW of N. Am.*,
   No. 20-15475, 2022 WL 1830797 (D.N.J. June 3, 2022) ..................................15

*Kozlowski v. Kozlowski*,
164 N.J. Super. 162 (Ch. Div. 1978) ...................................................21

*Lo Bosco v. Kure Eng'g Ltd.*,
891 F. Supp. 1020 (D.N.J. 1995).........................................................22, 23, 24

*Mellon Bank (East) PSFS v. Farino*,
960 F.2d 1217 (3d Cir. 1992) .............................................................9

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004) .................................................................9

*Murphy v. Eisai*,
503 F. Supp. 3d 207 (D.N.J. 2020).....................................................9

*New Mea Constr. Corp. v. Harper*,
203 N.J. Super. 486 (App. Div. 1985) ................................................25

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
496 F.3d 312 (3d Cir. 2007) ...............................................................11

*Oakwood Labs. LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021) ...............................................................18

*Read v. Profeta*,
397 F. Supp. 3d 597 (D.N.J. 2019)......................................................19, 20, 24

*Rivera v. Valley Hospital, Inc.*,
No. 15-5704, 2017 WL 916436 (D.N.J. Mar. 8, 2017) ......................27

*SalandStacy Corp. v. Freeney*,
No. 11-3439, 2012 WL 959473 (D.N.J. Mar. 21, 2012) ....................14, 22

*Saltiel v. GSI Consultants, Inc.*,
170 N.J. 297 (N.J. 2002).....................................................................25

*Sullivan v. Jefferson, Jefferson & Vaida*,
167 N.J. Super. 282 (App. Div. 1979) ................................................19

*Wise v. Hickman*,
No. 18-12994, 2020 WL 6375788 (D.N.J. Oct. 30, 2020)..................27

*Wittner v. Metzger*,
    72 N.J. Super. 438 (App. Div. 1962) ................................................................19

**Statutes**

18 U.S.C. § 1836 *et seq.* ......................................................................................8

N.J.S.A. § 42:1A–39(e)(2) ..................................................................................21

**Other Authorities**

Fed. R. Civ. P. 4(e) ................................................................................................9

Fed. R. Civ. P. 8(a)(2) ........................................................................................17

Fed. R. Civ. P. 9(b) ......................................................................................5, 15, 17

Fed. R. Civ. P. 12(b)(2) ..................................................................................9, 14

Fed. R. Civ. P. 15(a) ..........................................................................................27

L. Civ. R. 15.1 ....................................................................................................27

## PRELIMINARY STATEMENT

Plaintiff Legal Bay LLC ("Legal Bay") instituted this action in state court seeking redress for consequences created by defendants' unlawful conduct, and for irreparable harm it suffered from trusting the wrong people to do the right thing.

In the face of indisputable proof demonstrating their repeated pattern of unlawful conduct, Mustang Funding LLC, Mustang Specialty Funding I, LLC, Mustang Specialty Funding II, James Beltz, and Kevin Cavanaugh (collectively, "Defendants") improperly attempt to litigate the entirety of this case on a motion to dismiss. In so doing, they rely upon self-serving assertions and mischaracterized evidence, and in their attempt to distract this Court from three ultimate realities that fundamentally undermine their motion: (1) Defendants are subject to personal jurisdiction in New Jersey ; (2) Legal Bay's Complaint exceeds the factual predicates required survive a motion to dismiss; and (3) any doubt surrounding the complaint can be addressed by granting Legal Bay's cross-motion to amend.

Setting aside their improper attempt to fully litigate this matter at the earliest stages of this proceeding,  Defendants fail to show any merit in their quest to avoid liability. Rather, they only succeed in creating a question of material fact that precludes granting their motion. For these reasons, along with those discussed at length below, this Court should deny Defendants' motion and grant Legal Bay's cross-motion for leave to amend the complaint.

1

## STATEMENT OF FACTS

This matter arises out of a mutually assented to, but unfortunately unwritten, joint venture agreement between the parties. Indisputably, this joint pursuit between Legal Bay and the Defendants is evidenced by (1) extensive negotiations regarding how the joint venture would operate, (Verified Complaint ("Compl.") ¶¶ 25–39 (ECF No. 1-1)); (2) the agreed upon contributions of the parties to the joint venture; (3) joint property interest; (4) shared right of mutual control or management; (5) mutual expectations of profit; (6) the right to participate in those profits; and (7) the limitation of the joint venture's objective to provide private litigation funding. (*Id.* ¶¶ 66–78).

As set forth in the Complaint, which must be accepted as true on a motion to dismiss, the agreed upon terms of the joint venture agreement are based upon written and verbal representations by defendants James Beltz and Kevin Cavanaugh during the summer of 2018. (*Id.* ¶ 28). Specifically, Mr. Beltz and Mr. Cavanaugh informed Legal Bay that the Defendants would: (1) provide financing for the litigation funding business; (2)  not enter the litigation funding business as a broker or originator of litigation funding matters; and (3) not do business with Legal Bay's broker, attorney, and surgical provider relationships, either existing in the summer and fall of 2018, or to be developed after Defendants began financing for the litigation funding business. (*Id.* ¶ 29). In order to solidify the terms of the joint venture, and in an effort

137308342.1

to establish well-defined roles, the parties agreed that the **sole** contact between Defendants and anyone referral source generated through Legal Bay would bethrough Legal Bay. (*Id.*).

Relying on Defendants' representations, Legal Bay went to great lengths to fulfil its obligations to the joint venture. To that end, the parties executed a Line of Credit Agreement ("LOCA") and Legal Bay shared its confidential, proprietary information with Defendants. (*Id.* ¶¶ 40–43, 44–65).

Based upon Defendants' representations, the parties repeatedly affirmed their obligations with respect to the joint venture. From late 2018 until early 2022, in its New Jersey-focused operations alone, the joint venture entered into ninety-seven (97) funding contracts to provide financing for plaintiffs and attorneys in connection with litigation funding matters in New Jersey state and federal courts. (*Id.* ¶ 11). Beyond New Jersey, Legal Bay and its fellow joint venturers, prepared and funded 1,680 contracts for individual litigants and attorneys in need of cash flow during the pendency of their lawsuits as of March 31, 2022. (*Id.*). Importantly, many of those agreements contain "choice of law provisions," compelling litigation in New Jersey. Thus, at all times during the joint venture, Defendants subjected themselves to the laws of the State of New Jersey.

During what would prove to be the peak of the joint venture's operations, Legal Bay far exceeded expectations and the venture soared. unknown to Legal Bay,

137308342.1

however, Defendants were secretly, and methodically, working to undermine Legal Bay's business platform, misappropriate its trade secrets, and deprive Legal Bay of its fairly earned profits. (*Id.* ¶¶ 79–143). Stated differently, Defendants refused to uphold the terms of the joint venture agreement once they saw an opportunity to proceed in the litigation funding industry without Legal Bay.

Following consecutive, inexplicable losses during periods where profits should have been much higher, Legal Bay investigated and determined that Defendants' actions served as a smokescreen for Defendants' true motives: to cut out Legal Bay completely and deny it the 25% of profits it was entitled to from the joint venture by all means necessary. (*Id.* ¶ 104–06; *see also id.* ¶¶ 107–119). For example, after denying funding for matters that fit squarely within the parameters of the joint venture, Defendants subsequently contacted and solicited the persons involved in those matters, without Legal Bay's knowledge, to fund the matters without involving Legal Bay. (*Id.* ¶¶ 105, 106). Notwithstanding their unquestionable act of "pushing" Legal Bay out of the opportunities presented by the joint venture, Defendants—by or through James Beltz and Kevin Cavanaugh—would continue to represent to Legal Bay that no wrongdoing occurred, and that Defendants remained invested in the success of the joint venture. (*Id.* ¶¶ 102–03).

However, Defendants actions and misrepresentations to Legal Bay resulted in diversion of business; degradation of Legal Bay's reputation; termination of Legal

4

Bay staff due to reduced business; and more. (¶¶ 108–119). In other words, Defendants unilaterally destroyed the joint venture, so as to usurp this business opportunity for themselves.

## PROCEDURAL HISTORY AND FACTS ESTABLISHING JURISDICTION OVER DEFENDANTS

On May 17, 2022, Legal Bay instituted this lawsuit in the Superior Court of New Jersey, Chancery Division, Essex County. On June 15, 2022, Defendants filed a notice of removal, transferring this Action to the  United States District Court for the District of New Jersey. (ECF No. 1). Defendants filed this present motion to dismiss on July 22, 2022, (ECF No. 19), arguing that the Complaint failed to show how this Court holds personal jurisdiction over any of the defendants, that Legal Bay insufficiently pleads fraud pursuant to Fed. R. Civ. P. 9(b), and that the Complaint otherwise fails to state a claim. (*See generally* ECF No. 19-1 (Defendants' Br. ("Defs.' Br.").

On the topic of personal jurisdiction, the complaint sufficiently addresses Defendants' systematic and continuous conduct within the State of New Jersey. In addition to indicating that the Defendants have funded at least ninety-seven (97) matters—a number of which remain active—in New Jersey, (Compl. ¶ 11), the "Mustang Entities solicit business from New Jersey plaintiffs, attorneys, and surgical centers though internet advertising targeted at New Jersey residents. Through their misappropriation and unlawful diversion of [Legal Bay's] business relationships

5

with New Jersey attorneys and brokers sourcing plaintiffs' cases pending in New Jersey courts, the Mustang Entities regularly do business with and provide litigation financing to individuals and entities located in New Jersey." (*Id.* ¶ 13). Thus, contrary to Defendants' bald contention that they are not subject to jurisdiction in New Jersey, the facts clearly establish that Defendants maintain a continuous and systematic presence within the state.

The Complaint further states that Mr. Beltz and Mr. Cavanaugh have made material misrepresentations to Mr. Janish, who Defendants knew was conducting business in New Jersey, to induce Legal Bay to become a member of the Joint Venture and execute the LOCA. (*Id.* ¶ 16).

In response to this motion, Legal Bay has provided the Declaration of Chris Janish ("Janish Decl.") and related exhibits to bolster the proof of this Court's personal jurisdiction over the Defendants. Collectively, the three Mustang Entities, as part of the joint venture, funded 97 contracts in New Jersey, the most recent one being funded on May 27, 2022. (Janish Decl. ¶¶ 3–4 & Ex. A).

From early 2018 until 2020, the joint venture—at the request of Defendants— included a "Jurisdiction and Governing Law" provision in their funding contracts that required "[a]ny controversy, disagreement, cause of action or claim arising from, pertaining to or relating to this Agreement," to be filed in "a federal or state court in Essex County, N.J." (*Id.* ¶ 5 & Ex. B). These same funding contracts show

6

137308342.1

the Mustang logo next to Legal Bay's logo on each page of the agreement. (*Id.* ¶ 6). The joint venture only changed this clause to be one requiring arbitration at JAMS at the insistence of Mr. Janish because of expediency and cost-efficiency. (*Id.* ¶ 7).

James Beltz and Kevin Cavanaugh exercise nearly complete control over the operations of the Defendants, (*Id*. ¶ 9), and their representations not only enticed Legal Bay to participate in the joint venture, but also sought to utilize Legal Bay's connections and networks to conduct business in New Jersey. (*Id.* ¶ 10). Thus, the harm they caused has been realized in New Jersey and was specifically directed to New Jersey. (*Id.* ¶¶ 11–12).

Defendants formed Mustang Specialty Funding I and Mustang Specialty Funding II and registered both as businesses in New Jersey for purposes of furthering the joint venture's operations in New Jersey. (*Id.* ¶ 13 & Ex. C (affidavits of service on registered agent in New Jersey)). Defendants advertised the joint venture with Legal Bay in New Jersey by placing signs in Legal Bay's New Jersey office, and even marketed Legal Bay as part of the servicing wing of the joint venture. (*Id.* ¶ 14 & Ex. D).

Defendants continue to solicit, as they have for years now, business in New Jersey. (*Id.* ¶ 15). Additionally, they are in regular contact with attorneys and individuals in New Jersey about the status of still-active matters the joint venture funded. (*Id.* ¶ 16). This active solicitation of individuals, attorneys, brokers, sub-

137308342.1

brokers, and surgical providers in New Jersey are at the behest of Messrs. Beltz and Cavanaugh and carried out by the other defendants. (*Id.* ¶ 15). In this regard, there can be no question that each of the Defendants has systematically and continually subjected themselves to the laws of the State of New Jersey.

## <u>LEGAL BAY'S CROSS MOTION TO AMEND</u>

In an abundance of caution, Legal Bay cross moves to amend its complaint. In the months since its initial filing, Legal Bay has uncovered more evidence and instances of misfeasance by Defendants, and the proposed Defendant to be added, TLFNJ LLC (a business entity conducting business in New Jersey and paying money to fund contracts in this state underwritten by Defendants).

As outlined in the proposed amended complaint, provided with Legal Bay's cross motion papers, (Declaration of Kieran T. Ensor ("Ensor Decl."), Ex. A), Legal Bay wishes to amend for the following reasons:

- Defendants and the proposed Defendant misappropriated Legal Bay's trade secrets under the Dushefend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.* Accordingly, good cause exists to permit amendment.
- Legal Bay uncovered that another party, TLFNJ LLC, a limited liability company doing business in New Jersey, and controlled by James Beltz, is responsible for unlawful activity against Legal Bay and the joint venture.
- TLFNJ LLC's actions to date, at a minimum, constitute tortious interference with Legal Bay's existing and prospective business relationships.

8

137308342.1

## LEGAL ARGUMENT

I.  **DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE THIS COURT HAS PERSONAL JURISDICTION OVER ALL THE DEFENDANTS**

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), In order "[t]o meet [its] burden, [a plaintiff] must 'establish[ ] jurisdictional facts through sworn affidavits or other competent evidence.'" *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004)). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citing *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992)).

If the Court  "does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc*, 384 F.3d at 97; *Murphy v. Eisai*, Inc., 503 F. Supp. 3d 207, 213 (D.N.J. 2020).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing Fed. R. Civ. P. 4(e)). "[T]he New Jersey long-arm statute permits the

137308342.1

exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x. 32, 37–38 (3d Cir. 2015). General jurisdiction exists when the defendant's affiliations with the forum state are "so continuous and systematic as to render [it] essentially at home in the forum state." (internal citations and quotations omitted).

Specific jurisdiction exists over a non-resident defendant where the plaintiff's claim "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)); *see Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' " (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specifically, courts must assess whether a defendant "purposefully avail[ed] itself of the privilege of conducting activities

10

within the forum State, thus invoking the benefits and protections of its laws."
*Hanson v. Denkla*, 357 U.S. 235, 253 (1958). A "deliberate targeting" of the forum
by the defendant(s) is necessary. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d
312, 317 (3d Cir. 2007). In other words, the jurisdictional nexus must be the result
of intentional conduct of a defendant(s). *See, e.g., Amberson Holdings LLC v.
Westside Story Newspaper*, 110 F. Supp. 2d 332, 334 (D.N.J. 2000) (internal
quotation marks omitted).

This Court holds specific personal jurisdiction over all the Defendants
because Legal Bay's complaint—whose facts were verified by Legal Bay's CEO,
Chris Janish—more than sufficiently explain how the defendants have and continue
to actively conduct business in this state, specifically directed at its citizens.[1]

Contrary to Defendants' selectively narrow reading of the complaint, (Def.
Br. at 16 (ECF No. 19-1), the complaint pleads the following about specific personal
jurisdiction:

- "In furtherance of their Joint Venture, the Mustang Entities and LB have
  entered into ninety-seven (97) funding contracts to provide financing for
  plaintiffs and attorneys in connection with litigation funding matters in New
  Jersey state and federal courts. As of March 31, 2022, the Mustang Entities
  and LB have entered into 1,680 funding contracts with plaintiffs and attorneys

---

[1] Legal Bay does not waive its assertions that New Jersey courts hold general jurisdiction over the
Defendants, as adequately pleaded in the Complaint, (Compl. ¶¶ 9–14 (ECF No. 1-1)); however,
for purposes of this motion, the Complaint and the Janish Declaration outline more than enough
jurisdictional evidence for this Court to exercise specific personal jurisdiction over  all the
Defendants.

137308342.1

to provide litigation funding in connection with lawsuits pending in various states (including the 97 in New Jersey)." (Compl. ¶ 11 (ECF No. 1-1)).

- "The Mustang Entities solicit business from New Jersey plaintiffs, attorneys, and surgical centers though internet advertising targeted at New Jersey residents. Through their misappropriation and unlawful diversion of LB's business relationships with New Jersey attorneys and brokers sourcing plaintiffs' cases pending in New Jersey courts, the Mustang Entities regularly do business with and provide litigation financing to individuals and entities located in New Jersey." (*Id.* ¶ 13).

- "For the same reasons, and as set forth below, the Mustang Entities' and the Individual Defendants' contacts with New Jersey and their relationship with LB, the Joint Venture and the subject matter of this litigation - all of which arise directly out of the Mustang Entities and Individual Defendants sustained and regular contacts with LB in New Jersey - subject each of them to specific jurisdiction in this State." (*Id.* ¶ 15).

- "This Court holds specific personal jurisdiction over Mr. Beltz and Mr. Cavanaugh because they have made material misrepresentations to Mr. Janish, who received them in New Jersey, to induce LB to become a member of the Joint Venture and execute the LOCA." (*Id.* ¶ 16).

- "The Individual Defendants' intentional dissemination of false information to Mr. Janish and Dr. Caravella, designed to deceive and damage LB in New Jersey, provides this Court with specific jurisdiction over Mr. Beltz and Mr. Cavanaugh in this State." (*Id.* ¶ 17).

In further support of those same jurisdictional facts, Mr. Janish has also submitted a declaration in opposition to this motion, which outlines the following facts on jurisdiction:

- Defendants and Legal Bay entered into ninety-seven funding contracts for New Jersey lawsuits from 2018 through May 27, 2022. (Janish Decl. ¶¶ 3–4 & Ex. A(spreadsheets pulled from Mighty)).

- From 2018 until 2020, at the request of the Defendants, the joint venture's funding agreements contained a "Jurisdiction and Governing Law" provision in their funding contracts that required "[a]ny controversy, disagreement, cause of action or claim arising from, pertaining to or relating to this Agreement," to be filed in "a federal or state court in Essex County, N.J." (*Id.* ¶ 5).

- James Beltz and Kevin Cavanaugh exercise nearly complete control over the operations of the defendants, and their representations to Legal Bay about the joint venture and conducting business together was put forward to conduct business in New Jersey.  Thus, the harm they caused has been realized in New Jersey. (Janish Decl, ¶ 9–11).

- Defendants, through Beltz and Cavanaugh, wanted to leverage Legal Bay's network and connections so that the joint venture could conduct business in New Jersey. (*Id.* ¶ 10).

-  Defendants formed Mustang Specialty Funding I and Mustang Specialty Funding II and registered both as businesses in New Jersey for purposes of furthering the joint venture's operations in New Jersey. (*Id.* ¶ 13 & Ex. C).

- Defendants advertised the joint venture with Legal Bay in New Jersey by placing signs in Legal Bay's New Jersey office, and even marketed Legal Bay as part of the servicing wing of the joint venture. (*Id.* ¶ 14 & Ex. D).

- Defendants continue to solicit, as they have for years now, business in New Jersey  New Jersey citizens about funding their lawsuits. (*Id.* ¶ 15).

- They are in regular contact with attorneys and individuals in New Jersey about the status of still-active matters the joint venture funded. (*Id.* ¶ 16).

- The solicitation of individuals, attorneys, brokers, sub-brokers, and surgical providers in New Jersey is at the direction of Beltz and Cavanugh. (*Id.* ¶ 15).

13

Additionally, the historic operation of the joint venture, as outlined in the complaint and supporting evidence with this opposition, unquestionably prove that Defendants knowingly subjected themselves to jurisdiction in this state for all claims, such as those pleaded in this case, involving Defendants' legal funding activities, business ventures, and commercial activity related to the industry in this state.

"Under New Jersey law, "the 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *SalandStacy Corp. v.* Freeney, No. 11-3439, 2012 WL 959473, *6 (D.N.J. Mar. 21, 2012) (citing *Blakely v. Cont'l Airlines*, 164 N.J. 38, 67 (N.J. 2000)). Further, where a plaintiff's "supplemental Affidavit is even more specific with respect to Defendants' purposeful conduct[,]" the Court has specific personal jurisdiction. *Id.* Legal Bay's Complaint and supporting declaration does just that do just that.

Therefore, the Court should deny Defendants motion to dismiss under Fed. R. Civ. P. 12(b)(2).

14

II.   **DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE LEGAL BAY STATES CLAIMS FOR ALL COUNTS IN THE COMPLAINT.**

A.   **Legal Bay's Complaint Surpasses Rule 9(b)'s Heightened Pleading Standard for the Fraud in the Inducement Claim**

"Rule 9(b) dictates that a plaintiff pleading fraud must state with particularity the circumstances constituting fraud or mistake." *Kavon v. BMW of N. Am.*, ___ F. Supp. 3d ____, No. 20-15475, 2022 WL 1830797, *13 (D.N.J. June 3, 2022). "The Third Circuit has interpreted this standard as requiring a plaintiff to plead '(1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff suffered an ascertainable loss as a result of the misrepresentation.' " *Id.* (quoting *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2010 WL 3636253, *9 (D.N.J. Sept. 8, 2010)). "Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.' " *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis v. Pennsylvania Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir. 1983)).

Fraud in the inducement imposes liability where the tortious conduct of a defendant(s) results in harm to a plaintiff after formation of an agreement. *See, e.g., Bracco Diag., Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 3d 557, 562 (D.N.J.

15

2002). In other words, the fraud must be "extrinsic" to the contract's performance. *Id.* "Illustrating with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud." *Id.*

Defendants attempt to argue that the Complaint does not identify specifics about the fraud alleged. (Def. Br. at 23–25). This argument simply ignores great portions of the factual narrative that explain their unlawful conduct. Indeed, the complaint is replete with examples of specific misrepresentations by Defendants to Legal Bay that caused damage. For example, the Complaint details specific representations, written and verbal, by Beltz and Cavanaugh during the summer of 2018 where they stated that they intended to form a litigation funding joint venture with Legal Bay. (Compl. ¶ 28). Specifically, the Complaint details the "who, what, and when" of Defendants' fraud, stating:

> Mr. Beltz and Mr. Cavanaugh each told Mr. Janish and Dr. Caravella that Newco. would provide financing for LB's litigation funding business. The Individual Defendants informed Mr. Janish and Dr. Caravella that Newco. — which, when formed, became the three Mustang Entity defendants—would: (a) provide financing for the LB's litigation funding business; (b) not enter the litigation funding business as a broker or originator of litigation funding matters; and (c) not do business with LB's broker, attorney, and surgical provider relationships, either existing in the summer and fall of 2018, or to be developed after

> Newco. began providing financing for LB's litigation funding business, other than through LB.

(*Id.* ¶ 29).

Relying on these representations, Legal Bay went to great lengths to position itself to fulfil its obligations in the proposed joint venture—including sharing confidential, proprietary information with Defendants. (*Id.* ¶¶ 40–43, 44–65). Legal Bay had no idea that Defendants falsely represented their intentions.

Unquestionably, Defendants' fraudulent inducement, as the Complaint explains, has resulted in irreparable harm, and both tangible and intangible damage—both of which are ascertainable. (*Id.* ¶¶ 101–111, 112–119, 120–143). Thus, Legal Bay's Complaint far exceeds the requirements of Rule 9(b)—even at this pre-discovery stage.

In light of the foregoing, there can be no question that Legal Bay has pled its claims with the requisite specificity, and, the Court should deny Defendants' motion on this ground.

## B. Legal Bay Plausibly Pleads Causes of Action for All Remaining Counts.

Under Fed. R. Civ. P. 8(a)(2), a sufficient complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." When adjudicating a motion to dismiss, courts in the Third Circuit assess the elements a plaintiff must plead to state a claim, do not presume threadbare or conclusory assertions, and "assume the veracity" of all well-pleaded factual

137308342.1

allegations. *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). "In addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations, [courts construe] the allegations and reasonable inferences 'in a light most favorable to the [plaintiff.]' " *Id.* (internal citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely" (internal quotations omitted)).

### 1.    Legal Bay Sufficiently States Claims for Relief Related to the Joint Venture Formed Between the Parties.

#### a.    Count One

In a clear attempt to avoid the consequences of their breach of the parties' oral agreement, Defendants "cherry pick" statements contained in one email, without discussing any surrounding context. Certainly, on a motion to dimisss, where facts remain disputed, a single email—among thousands exchanged—cannot be dispositive. If anything, it demonstrates that disputed issues of material fact preclude the entry of judgment in **anyone's** favor at this time.[2]

---

[2] Indeed, Mr. Janish's declaration contests the characterization of the email by Defendants. That email was in reference to the continuous efforts by Defendants to stall the completion of a formalized agreement. (Janish Decl. ¶ 8).

18

Notwithstanding Defendants' unpersuasive attempt to avoid liability, New Jersey law clearly supports the concept of an oral joint venture agreements. A joint venture is " 'an undertaking usually in a single instance to engage in a transaction of profit where the parties agree to share profits and losses.' " *Wittner v. Metzger*, 72 N.J. Super. 438, 444, (App. Div. 1962) (quoting *Kurth v. Maier*, 133 N.J. Eq. 388, 391 (E. & A. 1943)), *certif. den'd*, 37 N.J. 228 (1962); *accord Read v. Profeta*, 397 F. Supp. 3d 597, 634 (D.N.J. 2019).

"A joint venture ordinarily has some or all of the following elements: (1) a contribution by the parties of money, property, effort, knowledge, skill or other assets to a common undertaking; (2) a joint property interest in the subject matter of the venture; (3) a right of mutual control or management of the enterprise; (4) an expectation of profit; (5) the right to participate in profits; and (6) limitation of the objective to a single undertaking." *Read v. Profeta*, 397 F. Supp. 3d 597, 634 (D.N.J. 2019). "The sine qua non of joint venture is a contract purposefully entered into by the parties. The joint venture is not a status created or imposed by law but is a relationship voluntarily assumed and arising wholly ex contractu, express or implied." *Sullivan v. Jefferson, Jefferson & Vaida*, 167 N.J. Super. 282, 289 (App. Div. 1979). "The 'basic criterion of a joint venture' is 'the voluntary agreement of the parties to form a relationship with the intent to create a joint venture.' " *Read*, 397 F. Supp. 3d at 634 (quoting *Sullivan*, 167 N.J. Super. at 290).

19

137308342.1

"It is true that 'the joint venture relationship may be less formal' and 'may be implied wholly or in part from the acts and conduct of the parties.' " *Id.* (internal citation omitted). "Whether or not the parties to a particular contract have, as between themselves, created the relationship of a joint venture depends upon their intention [. . .] That is, for a joint venture to have been formed, the parties must have agreed upon the essential terms." *Id.* (cleaned up).

Indisputably, the facts in Legal Bay's Complaint demonstrate that the parties formed and operated an unwritten joint venture agreement. The parties extensively negotiated how the joint venture would operate, evidenced by phone calls, emails, verbal representations, and other items. (Compl. ¶¶ 25–39). This speaks to the intention of the parties and demonstrates the existence of a joint venture.

The Complaint also extensively explains actions undertaken by both parties to further the ends of the joint venture. (*Id.* ¶¶ 44–65). The Complaint also outlines the contribution of the parties to the joint venture, the joint property interest, the right of mutual control or management, expectations of profit, the right to participate in those profits, and the limitation of the venture's objective to a single undertaking—litigation funding. (*Id.* ¶¶ 66–78).

On a motion to dismiss, all facts in the complaint must be accepted as true, unless conclusively or definitively contradicted by documentary evidence. Unfortunately for Defendants, a single email—taken out of context, among

20

thousands exchanged over a multi-year period—fails to disprove (conclusively or otherwise) Legal Bay's claims. Accordingly, Defendants' motion should be denied.

### b.    Count Two

The Complaint adequately pleads entitlement to a dissolution and distribution of equitable percentages of the joint venture's profits. A Court sitting in equity possesses the inherent power to supervise the dissolution of a joint venture under New Jersey law. *Ditscher v. Booth*,   13 N.J. Super. 568, 571 (Ch. Div. 1951). Because New Jersey courts generally do not draw a distinction between partnerships and joint ventures, *Chiron Corp. v. Dir., Div. of Taxation*, 21 N.J. Tax 528, 541 (Tax 2004), the rules of dissolution of partnerships apply to joint ventures. *Kozlowski v. Kozlowski*, 164 N.J. Super. 162, 171 (Ch. Div. 1978), *aff'd*, 80 N.J. 378 (1979).

Applying statutory defaults to this unwritten joint venture, Section 39(e) of New Jersey's Revised Uniform Partnership Act ("RUPA") , *N.J.S.A.* § 42:1–1 to – 49, a court may order a dissolution where one partner has engaged in conduct relating to the partnership which makes it unreasonable to carry on the business of the partnership with that partner. *N.J.S.A.* § 42:1A–39(e)(2). Additionally, the Court holds the equitable power to dissolve a partnership, distribute its assets, and order an accounting. *Fishman v. Raphael & Fishman*, 141 N.J. Eq. 576 (Ch. Div. 1948).

Here, Count Two of the Complaint outlines why a dissolution is necessary: Defendants have engaged in conduct related to the joint venture that is harmful to

21

Legal Bay and renders it unreasonable to carry on the business of the joint venture. (Compl. ¶ 153). Therefore, Defendants motion should be denied on this count.

### c. Count Three

"An accounting in equity cannot be demanded as a matter of right or of course. The exercise of equitable jurisdiction to compel an account rests upon three grounds—first, the existence of a fiduciary of trust relation; second, the complicated nature or character of the account; and third, the need of discovery." *Borough of Kenilworth v. Graceland Memorial Park Ass'n*, 124 N.J. Eq. 35, 37 (N.J. Ch. Ct. 1938); *accord SalandStacey Corp.*, 2012 WL 959473 at *12.

At the outset, under New Jersey law, parties involved in a joint venture owe fiduciary duties to one another. *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1033 (D.N.J. 1995).  Second, the complicated nature of the account in question here speaks for itself—the Complaint alleges that Legal Bay has been deprived of funds it is entitled to due to the obfuscation and secrecy involved in the keeping of the account by Defendants related to the joint venture. (Compl. ¶ 161). As to the third element, the need to discover the value is critical to equitably distributing to Legal Bay its share of the joint venture's assets. Lastly, because the Court can order an accounting as part of a dissolution of a joint venture, as explained, the Complaint satisfies the requirements for obtaining an accounting.

Therefore, Defendants' motion should be denied on this count.

22

### d.    Count Four

The lack of a written contract does not preclude a finding that Defendants breached the joint venture agreement. In fact, merely because there are "business arrangements involving significant sums being conducted on [] general terms without the benefit of a written understanding [. . .] does not prevent the Court from determining whether there has been a breach of the alleged agreement or from fashioning a remedy." *Lo Bosco*, 891 F. Supp. at 1027.

The Complaint thoroughly outlines how Defendants breached the joint venture agreement formed between them. In addition to explaining the rights and obligations of all joint venture members during its operation, (Compl. ¶¶ 44–78), the Complaint, in the section entitled "E. **Defendants' Wrongdoing and Plaintiff's Irreparable Harm**", the Complaint details the instances of misfeasance and failure to uphold the terms of the joint venture agreement by the Defendants. (Id. ¶¶ 79–143).

In light of the extraordinary detail addressing the terms of the parties' agreement and Defendants breaches thereof, it strains credulity for Defendants to assert that Legal Bay fails to plausibly state a claim under Count Four. Accordingly, Defendants motion should be denied.

137308342.1

### e.    Count Five

The Complaint sufficiently pleads allegations of breaches of fiduciary duties stemming from the joint venture. "There can be no question that joint venturers owe each other a fiduciary duty." *Lo Bosco*, 891 F. Supp. at 1033. "The relation of joint adventurers ... is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." *Bowne v. Windsor*, 106 N.J. Eq. 415, 416 (Ch. Div. 1930), *aff'd*, 108 N.J. Eq. 274 (E. & A. 1931). "[T]he cases applying this doctrine [of fiduciary duties among members of a joint venture] all concern one joint venturer profiting at the other's expense." *Lo Bosco*, 891 F. Supp. at 1033.

"Claims for breach of fiduciary duty require: 1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read*, 397 F. Supp. 3d at 633 (internal citation omitted).

Here, Legal Bay sufficiently pleads a breach of fiduciary duties by Defendants. As explained, the Complaint plausibly shows the existence of a joint venture—meaning that the first element of a breach claim cannot be contested in this motion. Second, the body of the Complaint repeatedly outlines the breaches of duties owed. (Compl. ¶¶ 79–143 & 153). Count Five itself also details what exactly those duties owed were. (*Id.* ¶ 172). Lastly, the complaint sufficiently alleges the damages stemming from the breach of fiduciary duties. (*Id.* ¶¶ 173–77).

137308342.1

Further the claim is not barred by the economic loss doctrine. The Economic Loss Doctrine does not preclude tort liability for parties to a contract where  "the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316–17 (2002) (citing *New Mea Constr. Corp. v. Harper*, 203 N.J. Super. 486, 493 (App. Div. 1985)). As outlined above, New Jersey law imposes a duty upon Defendants independent of any contract between the parties, and Defendants owed separate, fiduciary obligations to Legal Bay which the complaint alleges they failed to uphold.

Therefore, the motion should be denied on this Count.

### 2.   Legal Bay Sufficiently Pleads a Claim for Breach of Contract under the LOCA

Defendants breached the LOCA and their arguments about notice requirements produce a question of fact, warranting denial of the motion. The LOCA is controlled by New York law under a choice of law provision.

"Under New York law, the essential elements of a breach-of-contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Innovative Biodefense, Inc. v. VSP Tech., Inc.*, 176 F. Supp. 3d 305, 317 (S.D.N.Y. 2016).  A party is relieved of its duty to perform under a contract when the other party has committed a material breach. *Franklin Pavkov Constr. Co.*

137308342.1

*v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 215 (N.D.N.Y. 1999). For a breach to be considered material, it must go to the root of the agreement between the parties. *Id.*

Here, the Complaint does allege that Defendants have breached the non-solicitation provision of the LOCA. (Compl. ¶¶ 195–96). Additionally, however, the Complaint also shows that the LOCA agreement was a by-product of the joint venture. (*See id.* ¶ 63). The material breach of the joint venture agreement is, by extension, a material breach of the LOCA because performance under the LOCA goes to the root of the joint venture agreement. Defendants' wrongful solicitation of matters derived from Legal Bay's confidential lists, without involving Legal Bay, constitutes a material breach of the joint venture agreement and the LOCA, too.

As a result, Legal Bay was alleviated of its right to perform under any of the terms of the LOCA. Thus, it did not need to follow the notice provision for terminating the LOCA. Defendants' conduct violates the LOCA and they are not alleviated from adhering to its terms because of their breach.

Therefore, Legal Bay has adequately pleaded a cause of action for breach of the LOCA. Alternatively, the Court should grant Legal Bay leave to amend and further clarify this count.

## III.   GOOD CAUSE EXISTS TO PERMIT LEGAL BAY TO AMEND ITS OPERATIVE COMPLAINT IN THIS MATTER.

Should the Court find that any aspect of the Complaint is deficient—which it should not—the Court should grant Legal Bay's cross-motion for leave to file an

amended Complaint. The Third Circuit liberally permits the amendment of pleadings to ensure that a particular claim will be decided on its merits rather than on technicalities. *Dole v. Acro Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) (The grant of a motion to amend is within the discretion of the District Court). Federal Rule of Civil Procedure 15(a)(2) permits a party to amend when justice so requires. Fed. R. Civ. P. 15(a)(2)

Federal Rule of Civil Procedure 15(a) and Local Rule of Civil Procedure 15.1 govern a party's request for leave to amend a complaint and states, in pertinent part, that a party may amend its complaint after obtaining the Court's leave. Fed. R. Civ. P. 15 (a)(2); L. Civ. R. 15.1; *see also Rivera v. Valley Hospital, Inc.*, No. 15-5704, 2017 WL 916436, *2 (D.N.J. Mar. 8, 2017) (internal citation omitted). "Under these rules, the court should freely give leave when justice so requires." *Wise v. Hickman*, No. 18-12994, 2020 WL 6375788, *6 (D.N.J. Oct. 30, 2020) (Dickson, M.J. (ret.)). "This standard ensures that claims will be decided on their merits rather than on mere technicalities." *Id.* (citing *Dole*, 921 F.2d at 487).

"The United States Court of Appeals for the Third Circuit interprets that mandate as requiring that the District Court grant leave to amend in the absence of (a) unfair prejudice, (b) futility of amendment, (c) undue delay, (d) bad faith, or (e) dilatory motive." *Id.* (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107–08 (3d Cir. 2002)).

137308342.1

This Court should grant Legal Bay leave to amend its complaint. Legal Bay wishes to assert additional facts based upon its ongoing investigation into the circumstances present here. It additionally wishes to conform its pleading to this Court's rules. Also, new, material facts have been uncovered which bolster Legal Bay's claims and underpin its new claims, conclusively assuaging futility concerns.

Further, Defendants suffer no prejudice from permitting Legal Bay to amend because they have not filed an answer in this case or conducted discovery. To that end, amendment will not produce undue delay in this case because the initial scheduling remains upcoming as of the date of this filing and no scheduling orders have been entered.

Finally, Legal Bay does not seek to amend in bad faith or for a dilatory motive: it wishes only to ensure that its claims can be heard on the merits in this Court and not hounded by those wishing to waste this Court's time by feigning technicalities.

Therefore, the Court should grant Legal Bay's cross-motion to amend.

## <u>CONCLUSION</u>

For the reasons above, Plaintiff, Legal Bay LLC requests that the Court deny Defendant's Motion, ECF No. 19, and grant Legal Bay's cross-motion to amend.

137308342.1

Dated: August 31, 2022                    By:

**FOX ROTHSCHILD LLP**
Jordan B. Kaplan
Kieran T. Ensor
49 Market Street
Morristown, NJ 07960
JBKaplan@FoxRothschild.com
KEnsor@FoxRothschild.com
(973) 994-7819
*Attorneys for Plaintiff*

29