K<small>ASOWITZ</small> B<small>ENSON</small> T<small>ORRES</small> LLP
1633 Broadway
New York, NY 10019
Phone: (212) 506-1700
Fax: (212) 506-1800

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

-------------------------------------------------------x
:
LEGAL BAY LLC, :
:
                         Plaintiff, :  Case No. 2:22-cv-03941-ES-JBC
:
            - against - :  Removed from the Superior Court
:  of the State of New Jersey, Essex
MUSTANG FUNDING, LLC, MUSTANG :  County – Chancery Division,
SPECIALTY FUNDING I, LLC, :  Docket No. (ESX-C-000086-22)
MUSTANG SPECIALTY FUNDING II, :
LLC, JAMES BELTZ, and KEVIN :
CAVANAUGH, :
:
                      Defendants. :
-------------------------------------------------------x

**REPLY IN FURTHER SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 1

I.    The Court Lacks Personal Jurisdiction Over Defendants ................... 1

II.   Counts I-VI Fail Because They Depend On The Existence Of A Joint Venture Agreement That Janish Admits Mustang Repeatedly Rejected ....................................................................................... 5

III.  Mustang Still Has Not Breached The LOCA As A Matter Of Law ...................................................................................................... 8

IV.  The Complaint Should Be Dismissed With Prejudice ........................... 9

CONCLUSION ..................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Alleghany Int'l, Inc.*,
  954 F.2d 167 (3d Cir. 1992) ............................................................................................. 8

*Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*,
  1 F. Supp. 3d 224 (S.D.N.Y. 2014) ................................................................................ 11

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir.1997) .......................................................................................... 12

*Express Freight Sys. Inc. v. YMB Enterprises, Inc.*,
  2019 WL 7494730 (D.N.J. Dec. 18, 2019) ...................................................................... 4

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) ................................................................................................. 3, 4

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998) ............................................................................................ 2

*Interactive Logistics, Inc. v. Answerthink, Inc.*,
  2001 WL 1825982 (D.N.J. June 12, 2003) .................................................................. 6, 8

*McArdle v. Tronetti*,
  961 F.2d 1083 (3d Cir. 1992) .......................................................................................... 5

*O'Connor v. Sandy Lane*,
  496 F.3d 312 (3d Cir. 2007) ........................................................................................ 3, 4

*Rickman v. BMW of N. Am. LLC*,
  538 F. Supp. 3d 429 (D.N.J. 2021) .............................................................................. 3, 4

*Wolstenholme v. Bartels*,
  511 F. App'x 215 (3d Cir. 2013) ..................................................................................... 3

**Statutes**

Defend Trade Secrets Act ..................................................................................................... 9

New Jersey Trade Secrets Act .............................................................................................. 9

**Other Authorities**

Rule 9(b) ........................................................................................................................... 2, 7

Rule 12(b)(6) ......................................................................................................................... 12

# ARGUMENT

Despite their efforts to introduce additional evidence and recast the facts, nothing in Legal Bay's ("LB") answering brief refutes the inescapable truth that the Complaint itself and the documents referenced therein reveal that the parties never entered into a joint venture. LB fails to meaningfully contest the arguments articulated in Mustang's Memorandum of Law in support of its Motion to Dismiss ("Memorandum"), which lead to only one result: dismissal of LB's Complaint with prejudice. Indeed, the admissions in LB's responsive filings only serve to strengthen Mustang's arguments for dismissal and raise new bases for doing so. If the Court believes it should exercise jurisdiction over Defendants, which it should not, then it only should do so to dismiss the Complaint with prejudice, including: (i) Counts I-VI because Christopher Janish ("Janish") **has admitted, and reaffirms in his Declaration, that Mustang never entered into a joint venture agreement with LB**; and (ii) Count VII for breach of the LOCA's non-solicitation provision because that provision did not apply and could not be breached when the allegedly proscribed conduct occurred.

## I. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

LB effectively concedes that the Court does not have general jurisdiction over Defendants. (*See* ECF 27 § I (declining to substantively address its position that the Court has general personal jurisdiction over Defendants).) LB also does not

establish specific jurisdiction because it fails to show that Defendants—all based in Minnesota—purposefully directed any alleged conduct at New Jersey or that Defendants' New Jersey contacts give rise to LB's claims for relief.

Defendants' alleged tortious conduct does not establish specific personal jurisdiction because LB has pled no facts showing that Defendants specifically directed any of the relevant misconduct purportedly giving rise to its claims at New Jersey. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (forum must be the "focal point" of the alleged tortious conduct). This is clear from LB's allegation that only 97 of the 1,680 funding contracts executed by Mustang and LB concerned "litigation funding matters in New Jersey state and federal courts." (ECF 27 at 11.)

First, LB does not, and cannot, deny that Mustang paid LB an off-contract and carried-interest fee for all 97 funding contracts related to litigation in New Jersey. (*See* ECF 19-1 at 6 (noting that Mustang indisputably has compensated LB for every one of its successful referrals "under a broker-fee structure comprising two payments: (i) an 'off-contract' payment of 7-9% of the amount funded, disbursed upon execution of the funding contract; and (ii) a 'carried-interest' payment of between 15% and 25% of any amount in excess of the funded principal ultimately recovered by Mustang").) Thus, those 97 funding contracts are not at issue in this lawsuit, so any New Jersey contacts related to those funding contracts—or any

2

choice-of-law or other terms in those funding contracts—are irrelevant to the personal jurisdiction analysis. *See, e.g., Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 440 (D.N.J. 2021) ("Even if the defendant has sufficient contacts with a forum, the plaintiffs' claims must 'arise out of or relate to' those contacts." (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)).

Second, LB's contention that 97 of the 1,680 funding contracts executed by Mustang and LB concerned litigation in New Jersey necessarily means that the other 1,583 funding contracts executed relate to lawsuits pending in states other than New Jersey. (ECF 26 at 11.) To be sure, Mustang also paid LB an off-contract and carried-interest fee for all 1,583 of those funding agreements, so they too are not at issue and not relevant to the personal jurisdiction analysis. *See, e.g., Rickman*, 538 F. Supp. 3d at 440 (citing *Ford*, 141 S. Ct. at 1025). However, they illustrate the point that roughly 95% of Mustang's business relates to cases in states other than New Jersey and that Mustang by no means directs its conduct to New Jersey any more than it does to any other state. *See O'Connor v. Sandy Lane*, 496 F.3d 312, 317, 323 (3d Cir. 2007) (explaining that "what is necessary is a deliberate targeting of the forum" and holding that "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test"); *Wolstenholme v. Bartels*, 511 F. App'x 215, 220 (3d Cir. 2013) (holding that the plaintiff's residence in the forum was inconsequential because the alleged scheme concerned transactions and

3

companies outside the forum).

The fact remains that LB still has not identified a single New Jersey business or individual with whom Mustang allegedly executed a funding contract without paying LB an off-contract and carried-interest fee—*i.e.*, a purportedly misappropriated funding contract at issue in this lawsuit. Because all of Defendants' alleged contacts with New Jersey cited in LB's Complaint and answering brief pertain to funding contracts for which Mustang has already paid LB, none of those New Jersey contacts are relevant to this Court's personal jurisdiction analysis. *See Rickman*, 538 F. Supp. 3d at 440 (citing *Ford*, 141 S. Ct. at 1025); *O'Connor*, 496 F.3d at 317, 323.

At most, LB's allegations suggest Defendants' alleged conduct purportedly produced harm felt in New Jersey simply because LB is located there, which is insufficient to establish specific jurisdiction. (*See* Janish Decl. ¶¶ 11-12 (noting that LB is "New Jersey-based" and that Janish's home and office "are in New Jersey")); *see, e.g.*, *Express Freight Sys. Inc. v. YMB Enterprises, Inc.*, 2019 WL 7494730, at *4 (D.N.J. Dec. 18, 2019) (holding that "a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum" is insufficient on its own to establish specific jurisdiction).

## II. COUNTS I-VI FAIL BECAUSE THEY DEPEND ON THE EXISTENCE OF A JOINT VENTURE AGREEMENT THAT JANISH ADMITS MUSTANG REPEATEDLY REJECTED

The Court must dismiss LB's first six claims because Janish admits Mustang never formed a joint venture or entered into any joint venture agreement with LB, the existence of which is an essential element of every one of the offenses alleged in Counts I-VI. LB's inability to satisfy that element of each of the first six claims warrants their dismissal with prejudice.

Although the admission that Mustang and LB never formed a joint venture or entered into any joint venture agreement is clear from Janish's January 30, 2020, email (the "January 30 Email") (ECF 1-1 at 121, Ex. I), and April 15, 2020, email (the "April 15 Email") (ECF 19-3, Ex. 2)—both cited and discussed in Mustang's Memorandum (ECF 19-1 at 18-22)—LB's answering brief (ECF 27) and Janish's Declaration[1] (ECF 27-1) further crystalize that point. Discussing Janish's April 15 Email containing his concession that "a *formal arrangement was never progressed by* [Mustang]," (*see* ECF 19-3, Ex. 2 (emphasis added)), LB asserts, "[t]hat email was in reference to the continuous efforts by [Mustang] to stall the completion of a

---

[1] Paragraphs 5-7 and 14-16 of Janish's Declaration reflect improper attempts to amend the Complaint with new factual assertions that are neither integral to nor relied upon in that pleading. The Court should not consider the new facts and exhibits in those paragraphs in deciding Mustang's Motion to Dismiss. *See, e.g.*, *McArdle v. Tronetti*, 961 F.2d 1083, 1089 (3d Cir. 1992) ("[D]efects in [a] complaint clearly [can] not be remedied by [an] affidavit.").

5

formalized agreement."[2] (ECF 27 at 18 n.2. (citing ECF 27-1, Janish Decl. ¶ 8).) Janish's admission is fatal—Mustang continuously refused to execute a joint venture agreement with LB precisely because it never wanted or intended to form a joint venture with LB.

Indeed, it is clear why Mustang refused LB's demands and why it is implausible that a joint venture was formed (even if the Court were to ignore Janish's admission and emails confirming that there was no such joint venture). LB demanded—and, despite Janish's acknowledgement of Mustang's repeated rejections, somehow still claims entitlement to—25% of Mustang's profits for providing no additional value beyond the referrals for which LB had already been paid. By itself, LB's contention that Mustang agreed to such unfavorable terms is implausible. That LB does so notwithstanding Janish's admissions that Mustang continuously refused to agree to those terms is simply frivolous. LB cannot claim the existence of, and attempt to enforce, a purported agreement by which Mustang continuously manifested an intent to *not* be bound on terms no reasonable

---

[2] Contrary to LB's assertion, Defendants did not "'cherry pick' statements contained in one email" (ECF 27 at 18)—Defendants cited conclusive statements from *two* emails, one of which LB attached as an exhibit to its Complaint. (*See* 19-1 § II.) While LB objects to Defendants' purported failure to discuss the context surrounding those statements, Janish's Declaration and LB's answering brief clearly show that any such context only further supports Defendants' assessment of Janish's admissions. (*See* ECF 27 at 18; ECF 27-1 ¶ 8.) And although LB contends that "a single email—among thousands exchanged—cannot be dispositive" (ECF 27 at 18), LB evidently could not find any email among the purported thousands to attach in support of that point, instead improperly and futilely attempting to overcome Janish's admissions by pleading entirely new facts in his Declaration. (*See* ECF 27-1 ¶¶ 5-7, 14-16.)

6

businessperson would accept. *See Interactive Logistics, Inc. v. Answerthink, Inc.*, 2001 WL 1825982, at *34-35 (D.N.J. June 12, 2003) ("In the negotiating process, when plaintiff requested that defendant make certain modifications to the draft Consulting Agreement, defendant declined to make such modifications, and the agreement was never signed. . . . By virtue of not having signed the agreement, defendant did not indicate an intent to be bound. Because there was no mutual intent to be bound, the Consulting Agreement does not constitute a binding contract between the parties.").

Janish's admissions preclude LB's recovery on Counts I-VI. The existence of the purported joint venture agreement is a necessary predicate for each of LB's putative claims alleged in those first six counts—namely: (i) declaratory judgment that the Mustang Entities *formed the purported joint venture* with LB; (ii) dissolution and winding up of the *purported joint venture*; (iii) accounting of the *purported joint venture*; (iv) breach of the *purported joint venture agreement*; (v) breach of fiduciary duties supposedly arising out of Mustang's alleged membership in the *purported joint venture*; and (vi) fraudulent inducement[3] of LB to *form the purported joint venture*. Mr. Janish's admission that Mustang and LB never formed a joint venture

---

[3] As to LB's failure to plead its claim for fraudulent inducement with the specificity required under Rule 9(b), Section III of Defendants' Memorandum fully addresses the arguments raised in LB's answering brief and establishes the insufficiency of LB's allegations. (*See* ECF 19-1 at 23-25.)

or entered into any joint venture agreement therefore fatally undermines LB's first six claims. *See Interactive Logistics*, 2001 WL 1825982, at *34 ("[I]t is axiomatic that before there can be a breach of contract there must be a contract." (quoting *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 175 (3d Cir. 1992))).

### III. MUSTANG STILL HAS NOT BREACHED THE LOCA AS A MATTER OF LAW

LB's claim for breach of the LOCA should be dismissed for the same reasons Mustang stated in its Memorandum as well as for the additional bases that necessarily arise from LB's contention that the LOCA is a "by-product" of the purported joint venture agreement.

First, LB's answering brief does not contest Mustang's argument that all of the alleged conduct underlying LB's claim for breach of the LOCA's non-solicitation provision occurred well before that provision became applicable. At most, LB vaguely and inaccurately contends that Mustang's "arguments about notice requirements produce a question of fact." (ECF 27 at 25.)  But, as Mustang discusses in its Memorandum (ECF 19-1 § IV), the LOCA's non-solicitation provision—*i.e.*, the sole LOCA provision on which Count VII is based—is unambiguously inapplicable until the LOCA is cancelled.  And since LB did not provide notice of its purported cancellation of the LOCA until May 18, 2022 (ECF 19-3, Ex. 1)—two days after LB filed its Complaint—it is impossible that any of Mustang's alleged solicitation asserted in LB's Complaint was prohibited by the

then-inapplicable non-solicitation provision. This is true regardless of whether LB was—as it now contends—alleviated from any duty to comply with the LOCA's cancellation notice provisions (it was not), because, again, even if it were excused from providing 60-days' notice of cancellation, LB still did not even attempt to cancel the LOCA until May 18, 2022. (*See id.*)

Second, LB's suggestion that the LOCA is a "by-product" of the purported joint venture agreement (*see* ECF 27 at 26)—seemingly implying that the LOCA is part of that purported agreement—warrants dismissal of Count VII with prejudice either because (i) LB has no separate cause of action for breach of the LOCA apart from its claim for breach of the purported joint venture agreement (Count IV), and (ii) Janish's admissions that Mustang never entered into a joint venture agreement with LB are equally fatal to Count VII for breach of the LOCA as they are for Counts I-VI. (*See supra* § II.)

Accordingly, the Court should dismiss Count VII alleging breach of the LOCA for either of these independent bases.

### IV.  THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

LB's Complaint should be dismissed with prejudice and its Motion to Amend denied because amendment is futile. LB proposes amending the Complaint to add claims for (i) tortious interference with existing business relationships, and (ii) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA")

9

and New Jersey Trade Secrets Act ("NJSA").[4] Here again, Janish's admissions that Mustang refused to enter a joint venture agreement with LB preclude LB from recovering on either proposed claim.

As with Counts I-VI of the Complaint, LB must establish the existence of a joint venture agreement to state its proposed claims for tortious interference and trade-secret misappropriation. Absent a joint venture, LB cannot show that Defendants had any duty to abstain from the alleged conduct underlying those claims—namely, using information LB voluntarily shared and working with brokers and "origination sources" who also have worked with LB. *See Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 273 (S.D.N.Y. 2014) (no trade-secret misappropriation where the plaintiff and defendant "were not joint venturers, or co-employees, such that [the defendant] had any special duty to [the plaintiff]," and the defendant did not "gain[] access to [the plaintiff's] alleged trade secret in violation of a contractual or otherwise relevant duty, or . . . use[] improper means to discover it"). Thus, Janish's admissions that Mustang refused to form a joint venture or enter a joint venture agreement with LB are equally fatal to LB's proposed claims for tortious interference and trade-secret misappropriation as they are to Counts I-VI of the current Complaint. LB's proposed amendment of the

---

[4] LB also proposes naming an additional Mustang entity Defendant, TLFNJ LLC ("TFLNJ"), purportedly involved in the same activity alleged in the current Complaint—a cosmetic addition that does not improve the viability of LB's claims in any respect.

10

Complaint therefore is futile and its Motion to Amend should be denied. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1435 (3d Cir. 1997) (finding futility, in the context of discussing leave to amend, where claims would not survive a Rule 12(b)(6) motion "even if pled with more particularity").

## CONCLUSION

For the foregoing reasons, the Court should dismiss LB's Complaint in its entirety with prejudice.

Dated: New York, New York
      September 19, 2022

                                              Kasowitz Benson Torres LLP

                                              By: */s/ Edward E. Filusch*
                                                  Edward E. Filusch
                                                  Sheron Korpus
                                                  David Tyler Adams
                                             1633 Broadway
                                             New York, New York 10019
                                             Tel.: (212) 506-1700
                                             Fax: (212) 506-1800
                                             Email: efilusch@kasowitz.com
                                                          skorpus@kasowitz.com
                                                          dadams@kasowitz.com

                                             *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on September 19, 2022, on all counsel of record via CM/ECF, pursuant to the Federal Rules of Civil Procedure.

                                                */s/ David Tyler Adams*
                                                David Tyler Adams